James L. Wraith, State Bar No. 112234
E-mail: jwraith@selvinwraith.com
John A. Chatowski, State Bar No.174471
E-mail: jchatowski@selvinwraith.com
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976

Attorneys for Plaintiff
STRATFORD INSURANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATFORD INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>AHMAD SHAMS, an individual, MEREX HOLDING CORPORATION, a Delaware corporation, and MEREX AIRCRAFT COMPANY, INC., a California corporation,<br><br>　　　　Defendants. | CASE NO. 2:19-cv-03390<br><br>**STRATFORD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT** |

　　　　Plaintiff Stratford Insurance Company ("Stratford" or "Plaintiff") complains and alleges against Defendants Ahmed Shams ("Shams"), Merex Holding Corporation ("Merex"), and Merex Aircraft Company, Inc. ("Merex Aircraft") (collectively "Defendants") as follows:

## I. JURISDICTION AND VENUE

　　　　1.　　Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants in this matter, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs,

1

1. as more fully explained below. This Court also has jurisdiction over these claims under 28 U.S.C. § 2201, the Declaratory Judgment Act.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(a)(1) and (c) in that the Defendants reside in this District and because they are subject to personal jurisdiction at the time the action is commenced. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the action occurred in this District, including on information and belief, the execution of the application for insurance, and the subject underlying claim and lawsuit involving Shams that is pending in the Superior Court of California for the County of Ventura. In addition, the contract of insurance that is the subject of this complaint identifies the mailing address of the named insured, Merex, as 101 N. Sepulveda Blvd., Suite 1950, El Segundo, CA 33027.

## II.  PARTIES

3. Stratford is a New Jersey corporation with its principal place of business in New Jersey, and is duly authorized to conduct business in California.

4. Plaintiff is informed and believes, and on that basis alleges, that Shams is an individual who resides in Ventura County, California. Plaintiff is also informed and believes, and on that basis alleges, that Shams founded Merex Aircraft in 1982, served as its Chief Executive Officer until 2013, and served as an employee and member of Merex Aircraft's Board of Directors until 2015.

5. Plaintiff is informed and believes, and on that basis alleges, that Merex is a Delaware corporation with its principal place of business in Ventura County, California.

6. Plaintiff is informed and believes, and on that basis alleges, that Merex Aircraft is a California corporation with its principal place of business in Ventura County, California. Plaintiff is also informed and believes, and on that basis alleges, that Merex owns and controls Merex Aircraft.

/ / /

## III. THE INSURANCE APPLICATION AND THE POLICY

7. In May 2018, Merex applied to Stratford for an insurance policy by submitting a Zürich-branded application entitled Private Company Select Insurance Policy Application ("Application"). A true and correct copy of the Application dated May 25, 2018 is attached hereto as **Exhibit A**, and is incorporated herein by reference.

8. Stratford issued an insurance policy to Merex that included Executive and Private Company Liability coverage ("D&O") for the policy period from May 30, 3018 to April 30, 2019, under policy number PDO0000020 ("Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit B**, and is incorporated herein by reference.

9. The Policy is a "claims made and reported" policy, and only applies to claims first made against the Insureds, and first reported to Stratford, during the policy period, and is also subject to all of the terms, conditions, limitations, exclusions, and endorsements contained therein.

10. The Insuring Agreement of the D&O form (Form CDO 1001 12/17) provides: "The Insurer shall pay, on behalf of any Insured Persons, Loss . . . arising from any Claim for any Wrongful Act taking place prior to the end of the Policy, and which is first made against the Insured during the Policy . . . and is reported to the Insurer in the time and manner required by this Policy."

11. The General Terms and Conditions of the Policy (Form CGTC 1001 10/17) defines the term "Named Insured" to mean the entity identified as such in the declarations. Stratford is informed and believes, and on that basis alleges, that Merex qualifies as the "Named Insured" within the meaning of the Policy.

12. The General Terms and Conditions of the Policy defines the term "Subsidiary" to mean any corporation of which the Named Insured owns more than 50% the outstanding stock or other interest in said subsidiary. Stratford is informed and believes, and on that basis alleges, that Merex Aircraft qualifies as a "Subsidiary"

3
STRATFORD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 2:19-cv-03390

of Merex within the meaning of the Policy.

13. The General Terms and Conditions of the Policy defines the term "Company" to mean the "Named Insured" and any "Subsidiary" thereof.

14. The General Terms and Conditions of the Policy defines the term "Executive" to mean any person who was, now is, or shall be a duly elected or appointed director, manager or member of the management board. Stratford is informed and believes, and on that basis alleges, that Shams qualifies as an "Executive" within the meaning of the Policy.

15. The General Terms and Conditions of the Policy defines the term "Employee" to means any past or present employee whose labor or service is engaged by and directed by the "Company" while performing duties related to the conduct "Company's" business. Stratford is informed and believes, and on that basis alleges, that Shams qualifies as an "Employee" under the Policy.

16. The D&O form defines the term "Insured Person" to mean any "Executive" or "Employee."

17. The D&O form defines the term "Loss" to include, among other things, Defense Expenses, costs and the amounts an Insured is legally obligated to pay as a result of any "Claim," including but not limited to settlements, compensatory damages, and judgments.

18. The General Terms and Conditions of the Policy defines the term "Defense Expenses" to include "reasonable and necessary legal fees and expenses incurred in the defense of a Claim."

19. The D&O form defines the term "Claim" to include, among other things, a "a. written demand for monetary, non-monetary, or injunctive relief made upon and Insured Person for a Wrongful Act," a "b. civil, proceeding for monetary or non-monetary relief against an Insured Person for a Wrongful Act, which is commenced by: service of a complaint or similar pleading; receipt of a notice of charges; or receipt of a Wells notice," and "c. any written request to toll or waive a statute of limitations

received by an Insured Person relating to a potential Claim" as defined in Paragraph II.A.1.a of the Policy form.

20. The D&O form defines the term "Wrongful Act" as:

> J. Wrongful Act means:
> 1. any actual or alleged breach of duty, error, misstatement, act or omission of an Executive but solely while acting in his or her capacity as such;
> 2. any actual or alleged breach of duty, error, misstatement, act or omission of any Employee but solely while acting in his or her capacity as such;
> 3. any actual or alleged breach of duty, error, statement, act or omission by the Company; or
> 4. any Interrelated Wrongful Act.

21. The General Terms and Conditions of the Policy define the term "Interrelated Wrongful Act" as:

> S. Interrelated Wrongful Acts means any Wrongful Acts that are:
> 1. repeated or continuous;
> 2. connected by reason of any common circumstance, situation, transaction, casualty, event, decision or policy; or
> 3. part of the same series of facts, circumstances, situations, transactions, casualties, events, decisions or policies.

22. The Notice of Claim and Wrongful Act provision in the General Terms and Conditions of the Policy provides:

///

///

    A. As a condition precedent to the obligations of the Insurer under this Policy, the Insureds shall give the Insurer written notice of any Claim . . . made during the Policy Period . . . against an Insured as soon as practicable, but in all events before the later of:

        1. ninety (90) days after the Policy expires and is renewed with the Insurer, provided however, if the Insured can prove to the Insurer's satisfaction that it was not reasonably possible for the Insured to give such notice within the ninety (90) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Insurer shall waive the foregoing time period . . . .

    B. Notwithstanding the conditions and obligations set forth in Subsection A., above, in the event the Insured fails to provide timely notice of a Claim, coverage may be denied by the Insurer solely on the basis of late notice only if the Insurer can show that such late notice materially prejudiced its interests.

    . . .

23. The Single Claim/Interrelated Wrongful Acts provision in the General Terms and Conditions of the Policy provides:

    All claims based upon or arising out of the same Wrongful Act or out of Interrelated Wrongful Acts shall be considered a single Claim, and each such Claim is deemed to have been first made on the earlier of the following:

    A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or

>  B. when written notice of a fact, circumstance, or situation giving rise to such Claim pursuant to Section VIII. Notice of Claim and Wrongful Act, Subsection C., above, was received by the Insurer.

24. The Policy also contains exclusions under which the Policy does not apply, including, among others:

  a. **Insured v. Insured Exclusion**. The D&O form provides:

  > The Insurer shall not be liable to pay any Loss arising from any Claim:
  >
  > . . .
  >
  > D. brought or maintained by or on behalf of any Insured, provided this exclusion shall not apply to:
  >
  > . . .
  >
  >  5. Any Claim against an Insured Person resulting from "Whistleblowing." For purposes of the preceding sentence, "whistleblowing" means the disclosure by an Insured of mismanagement, corruption, illegality or other wrongdoing."

  b. **Specific Matter Exclusion**. The Specific Matter Exclusion Endorsement to the Policy (Form CGTC 3014 10/17) provides:

  > The Insurer shall not be liable to pay any Loss in connection with any Claim arising out of, based upon or in consequence of, resulting from or in any way involving the Specified Matter(s) listed below or the same or substantially the same facts, circumstances, or Wrongful Acts underlying such specified Matter(s):

/ / /

Specified Matter(s)

Arch claim 000012854240 Garville, et al, Chris

. . .

c. **Prior Acts Exclusion**. The General Terms and Conditions of the Policy provides:

> The Insurer shall not be liable to pay any Loss in connection with any Claim:
>
> . . .
>
> D. arising out of, based upon or in consequence of, resulting from or in any way involving:
>
> 1. any Wrongful Act alleged in any demand, suit, proceeding or other claim which has been the subject of any notice given or reported prior to the inception of the Policy Period, or in any circumstance of which notice has been given under any policy of which this Policy or any Coverage Part is a renewal, replacement, or succeeds in time; or
>
> 2. any other Wrongful Act whenever occurring, which together with a Wrongful Act which has been the subject of such prior claim or notice, would constitute Interrelated Wrongful Acts.

## IV.  THE GARVILLE ACTION

25. On January 12, 2016, Chris Garville ("Garville"), Robert Cantu ("Cantu"), and others filed a breach of contract and "whistleblower" action against Merex, Merex Aircraft, Shams, and others in the Superior Court of the State of California, County of Alameda, entitled *Chris Garville, et. al. v. Merex Group, Inc.*, et al, Case No. RG16799813  ("Garville I Complaint").  A true and correct copy of the Garville I Complaint is attached hereto as **Exhibit C**, and is incorporated herein by reference.

On or about February 16, 2016, the defendants removed the action to the United States District Court, Northern District of California, Case No. 16-cv-00772 VC.

26. The Garville I Complaint alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, interference with prospective economic advantage, defamation, fraud, employment retaliation, violation of the Arms Export Control Act, sabotage, violation of the Racketeer Influenced and Corrupt Organizations Act, violation of the Foreign Corrupt Practices Act, breach of fiduciary duty, and unfair competition.  Garville, a former employee of Garville Aircraft, and Cantu, a former employee of ALCO Services, Inc., who is alleged to be wholly owned by Merex, allege, among other things, that defendants engaged in a scheme to intentionally sell counterfeit aircraft parts (Exhibit C, ¶¶ 66-100), and to inflate their revenues and profits by engaging in sham transactions involving false invoices.  (*Id.* at ¶¶ 101-103).  Plaintiffs also alleged that the defendants engaged in inappropriate conduct at air shows and industry conferences (*Id.* at ¶¶ 104-106), engaged in shareholding misconduct (*Id.* at ¶¶ 107-108), and violated the Corrupt Practices Act by making payments to government officials in Argentina.  (*Id.* at ¶¶ 203-204.)  Garville also alleges that he was terminated shortly after and exclusively because of his discovery of the counterfeit parts scheme.  (*Id.* at ¶ 100.)  On April 14, 2016, the action was dismissed without prejudice.

27. On April 14, 2016, Garville, Cantu, and others filed a civil action against Merex, Merex Aircraft, Shams and others in the Superior Court of the State of California, County of Alameda, entitled *Chris Garville, et. al. v. Merex Group, Inc.*, et al, Case No. RG16811618 ("Garville II Complaint").  On December 29, 2016, Garville filed a First Amended Complaint in the action.  ("Garville II Amended Complaint")  A true and correct copy of the Garville II Complaint, without exhibits thereto, and the Garville II Amended Complaint is attached hereto as **Exhibits D and E**, respectively, and are incorporated herein by reference.

///

28. The Garville II Amended Complaint alleges causes of action for fraudulent inducement, breach of contract, breach of the covenant of good faith and fair dealing, termination in violation of public policy, employment retaliation, unpaid wages, interference with prospective economic advantage, defamation, conversion, and breach of contract. Garville and Cantu re-alleged their allegations from their Garville I Complaint that, among other things, the defendants engaged in a scheme to intentionally sell counterfeit parts with false statements on them (Exhibit E, ¶¶ 19-59), and to inflate their revenues and profits by engaging in sham transactions involving false invoices. (*Id.* at ¶¶ 60-64). Garville again alleges that he was terminated shortly after and exclusively because of his discovery of the counterfeit parts scheme. (*Id.* at ¶ 100.) Garville and Cantu also allege that the counterfeit parts scheme "was first devised and implemented many years ago by Merex founder Mr. Shams, and was continued by him during the relevant period with the full knowledge and approval" of others at Merex and Merex Aircraft. (*Id.* at ¶ 55.) On January 31, 2017, the action was dismissed without prejudice.

## V.  THE MEREX CLAIM

29. Stratford is informed and believes, and on that basis alleges, that on or about June 5, 2017, just five months after the Garville II action was dismissed, ten months before Merex submitted its May 25, 2018 Application to Stratford, and ten months before the inception of the Policy, Merex and Merex Aircraft entered into a "Tolling and Standstill Agreement" with Shams to:

> . . . preserve the status quo relating to any and all Time Defenses (as defined below) relating to any and all claims arising as a consequence of the allegations set forth in a draft complaint dated as of April 25, 2017, attached hereto as Exhibit A, including the events and circumstances that gave rise to such allegations, under state and/or federal law ("Claims"), and any defenses and/or counterclaims concerning the Claims

10
STRATFORD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 2:19-cv-03390

1  (collectively, "Defenses") arising under state and/or federal law
2  that could be asserted by the Tolling Plaintiffs against the
3  Tolling Defendants or vice versa.

Stratford is informed and believes, and on that basis alleges, that Merex, Merex Aircraft, and Shams thereafter entered into three Amended and Restated Tolling and Standstill Agreements dated December 12, 2017, March 13, 2018, and June 22, 2018, all of which also refer to the "draft complaint." Copies of the four Tolling and Standstill Agreements that Stratford has obtained, but that are missing the "draft complaint," are collectively attached hereto as **Exhibit F**, and are incorporated herein by reference.

## VI. THE MEREX ACTION

30. On September 28, 2018, Merex and Merex Aircraft filed an action against Shams and The Ahmed and Victoria Shams Revocable Trust of 1999 in the Superior Court of the State of California, County of Ventura, entitled *Merex Holding Corp., et. al. v. Ahmed Shams, et al.*, Case No. 56-2008-00518236-CU-FR-VTA ("Merex Complaint"). On or about March 11, 2019, Merex and Merex Aircraft filed a First Amended Complaint in the action ("Merex Amended Complaint"). A true and correct copy of the Merex Complaint and the Merex Amended Complaint is attached hereto as **Exhibits G and H**, and is incorporated herein by reference. Stratford is informed and believes, and on that basis alleges, that the Merex Complaint and the Merex Amended Complaint are based on the same allegations in the "draft complaint" attached to the four Tolling and Standstill Agreements between Merex, Merex Aviation, and Shams, including the first Tolling and Standstill Agreement dated June 5, 2017.

31. The Merex Amended Complaint alleges causes of action for breach of contract, indemnification, declaratory judgment, misrepresentation, securities fraud, unjust enrichment, breach of fiduciary duty, and breach of employment agreement. Plaintiffs allege that at the time Merex acquired Merex Aircraft in 2011, Shams failed to disclose that he had directed Merex Aircraft employees to provide customers with

1  inferior, non-conforming parts at rates reflective of those commanded by the superior
2  products its customers ordered (i.e., counterfeit, non-OEM parts).  Plaintiffs allege that
3  this scheme resulted in an artificial inflation of the company's revenues.  Plaintiffs also
4  allege that:

> Mr. Shams knew, but failed to disclose, that the Company would sustain other, substantial injuries as a result of Defendants' intentional misconduct, including, among other things, the cost of (i) recalling defective parts; (ii) conducting a review of the Company's sales under Mr. Shams' leadership; (iii) *defending civil litigation brought by two former employees based in part on Mr. Shams' conduct*; (iv) responding to regulatory inquiries; and (v) reputational damage and loss of business and commercial goodwill….

(Exhibits G and H, ¶ 2 (emphasis added).)  Stratford is informed and believes, and on that basis alleges, that the "civil litigation brought by two former employees" is the Garville Action filed by Garville and Cantu.

32.  The Merex Amended Complaint also alleges that throughout his tenure until September 2015, Shams "directed Company employees to fill customer orders for original equipment manufacturer (OEM) parts with parts that were not OEM-manufactured and/or filled with non-OEM parts that were not manufactured according to OEM specifications."  (*Id.* at ¶ 15.  *See also* ¶¶ 27-38, and 43-50.)

### VII.  INSURANCE CLAIM

33.  On December 20, 2018, eighteen months after the June 5, 2017 Tolling and Standstill Agreement, and two months after the Merex Complaint was filed, Shams tendered the Merex Complaint to Stratford for a defense and indemnity under the Policy.  Stratford accepted Shams' tender and agreed to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action subject to a full reservation of rights.

# FIRST CAUSE OF ACTION

**(Declaratory Judgment – Duty to Reimburse Defense Expenses – Against All Defendants)**

34. Stratford refers to Paragraphs 1 through 33, inclusive, and by reference makes them a part hereof.

35. There is at present a controversy between Stratford and Shams in that Stratford contends that there is no coverage under the Policy for the claims asserted in the Merex Action, and therefore no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action. Stratford is informed and believes, and on that basis alleges, that Shams contends otherwise.

36. Stratford is also informed and believes, and on that basis alleges, that as plaintiffs in the Merex Action against Shams, Merex and Merex Aircraft are proper defendants in this action to determine the scope of coverage to Shams under the Policy.

37. Stratford requests that this Court declare that there is no potential for coverage and, therefore, no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action under the Policy for the reasons set forth below.

38. Stratford is informed and believes, and on that basis alleges, that the claims asserted in the Merex Action were first made to Shams before the Policy incepted, and at least as early as June 5, 2017, the date of the Tolling and Standstill Agreement. Accordingly, Stratford requests that this Court declare that there is no coverage under the Policy to Shams for the Merex Action, and therefore that Stratford has no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action.

39. Stratford is informed and believes, and on that basis alleges, that the claims asserted in the Merex Action against Shams are barred by the Insured v. Insured Exclusion, except for Loss resulting from "Whistleblowing," because Merex, Merex Aviation, and Shams are all "Insureds" within the meaning of the Policy. Accordingly,

1 Stratford requests that this Court declare that there is no coverage under the Policy to
2 Shams for any claims asserted in the Merex Action that do not seek recovery from
3 Shams for "Whistleblowing," and therefore that Stratford has no duty to reimburse
4 Shams for Defense Expenses in connection with such uninsured claims.

5  40. Stratford is informed and believes, and on that basis alleges, that all of the claims asserted in the Merex Action against Shams are barred by the Specific Matter Exclusion because the claims arise out of, are based upon or in consequence of, or result from the Specified Matter "Arch claim 000012854240 Garville, et al, Chris." Stratford is informed and believes, and on that basis alleges, that "Arch claim 000012854240 Garville, et al, Chris" is the Garville Action. Accordingly, Stratford requests that this Court declare that there is no coverage under the Policy for the Merex Action, and therefore that Stratford has no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action.

41. Stratford is informed and believes, and on that basis alleges, that the claims asserted in the Merex Action against Shams are barred by the Prior Acts Exclusion because the claims arise out of, are based upon or in consequence of, or result the Garville Action, and which constitutes a "Wrongful Act alleged in any demand, suit, proceeding or other claim which has been made the subject of any notice given or reported prior to the inception of the Policy Period, or in any circumstance of which notice has been given under any policy of which this Policy or any Coverage Part is a renewal, replacement, or succeeds in time," and also are a "Wrongful Act whenever occurring, which together with a Wrongful Act which has been the subject of such prior claim or notice, would constitute Interrelated Wrongful Acts." Accordingly, Stratford requests that this Court declare that there is no coverage under the Policy for the Merex Action, and therefore that Stratford has no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action.

42. Stratford is informed and believes, and on that basis alleges, that the claims asserted in the Merex Action against Shams are barred by the Single

Claim/Interrelated Wrongful Acts provision in the Policy because the claims arise out of the same Wrongful Act, or out of Interrelated Wrongful Acts, that being the claims asserted in the Garville Action, and as such, the Garville Action and the Merex Action are deemed to be first made on January 12, 2016, which pre-dates the inception of the Policy. Accordingly, Stratford requests that this Court declare that there is no coverage under the Policy for the Merex Action, and therefore that Stratford has no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action

## SECOND CAUSE OF ACTION

**(Declaratory Judgment – Duty to Indemnify – Against All Defendants)**

43. Stratford refers to paragraphs 1 through 42, inclusive, and by reference makes them a part hereof.

44. There is at present a controversy between Stratford and Shams in that Stratford contends that there is no coverage under the Policy for the claims asserted by the Merex Action, and therefore no duty to indemnify Shams. Stratford is informed and believes, and on that basis alleges, that Shams contends otherwise.

45. Stratford is also informed and believes, and on that basis alleges, that as plaintiffs in the Merex Action against Shams, Merex and Merex Aircraft are proper defendants in this action to determine the scope of coverage to Shams under the Policy.

46. Stratford requests that this Court declare that there is no potential for coverage and, therefore, no duty to indemnify Shams under the Policy with respect to the claims asserted in the Merex Action for the reasons set forth in Paragraphs No. 1-41, as set forth herein.

47. Accordingly, Stratford requests that this Court declare that there is no coverage under the Policy for the claims asserted by plaintiffs in the Merex Action, and that Stratford therefore has no duty to indemnify Shams against these claims.

///

///

## THIRD CAUSE OF ACTION

### (Reimbursement - Against Shams Only)

48. Stratford refers to paragraphs 1 through 47, inclusive, and by reference makes them a part hereof.

49. Stratford contends that it is entitled to reimbursement from Shams for all sums paid to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action or indemnify him against the Merex Action because Stratford has had no duty to defend or indemnify Shams against the claims asserted in the Merex Action.

50. Stratford is reimbursing and will continue to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action.. Stratford is reimbursing Shams for Defense Expenses under a reservation of rights, including the right to seek reimbursement from Shams of Defense Expenses , or indemnity payments for settlement or satisfaction of judgment against him, and costs and litigation expenses reimbursed by Stratford to defend uninsured or uncovered claims, or payment of settlement or satisfaction of judgment paid by Stratford to indemnify uninsured or uncovered claims, are recoverable from Shams, pursuant to *Buss v. Superior Court,* 16 Cal.4th 35 (1997), and *Scottsdale Ins. Co. v. MV Transportation,* 36 Cal.4th 643 (2005).

## PRAYER

WHEREFORE, Plaintiff Stratford Insurance Company prays for judgment against Shams, Merex, and Merex Aircraft as follows:

1. For a judicial declaration by the Court that Stratford has no duty to reimburse Shams for Defense Expenses in connection with the defense of the Merex Action under the Policy;

2. For a judicial declaration by the Court that Stratford has no duty to indemnify Shams in the Merex Action under the Policy;

///

3. For entry of judgment against Shams requiring Shams to reimburse Stratford for all sums paid by Stratford for all Defense Expenses in connection with the defense of the Merex Action and indemnify Shams against the Merex Action, or in the alternative, to reimburse Stratford for all sums paid for Defense Expenses in connection with the defense of the Merex Action against uninsured claims, according to proof.

4. For such other and further relief as the court deems just and proper.

Dated: April 26, 2019        SELVIN WRAITH HALMAN LLP

By: */s/ James L. Wraith*
James L. Wraith
John A. Chatowski
Attorneys for Plaintiff
STRATFORD INSURANCE COMPANY

291149.doc

STRATFORD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 2:19-cv-03390