# EXHIBIT H

DON A. LESSER (SBN 112887)
BARBARA L. GATELY (SBN 76497)
THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor
San Francisco, California 94104
Ph: 415.453.7600
Email: DLesser@LesserGroup.com

*Attorneys for Plaintiffs*
Merex Holding Corp., a Delaware corporation and
Merex Aircraft Company, Inc. a California corporation,

SUPERIOR COURT OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| MEREX HOLDING CORP., a Delaware Corporation; and MEREX AIRCRAFT COMPANY, INC., a California Corporation; <br><br> *Plaintiffs,* <br><br> vs. <br><br> AHMAD SHAMS, a resident of California, and THE AHMAD AND VICTORIA SHAMS REVOCABLE TRUST OF 1999, a California entity, and DOES 1-10, <br><br> *Defendants*. | Case No.: 56-2018-00518236-CU-FR-VTA <br><br> **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INDEMNIFICATION, DECLARATORY JUDGMENT, MISREPRESENTATION, SECURITIES FRAUD, UNJUST ENRICHMENT, BREACH OF FIDUCIARY DUTY AND BREACH OF EMPLOYMENT AGREEMENT** <br><br> **REQUEST FOR JURY TRIAL** |

Plaintiffs allege for their complaint against Defendants as follows:

**INTRODUCTION**

1.     Plaintiffs Merex Holding Corp. ("Merex Holding") and Merex Aircraft Company, Inc. ("Merex Aircraft" or the "Company") (collectively, "Plaintiffs") seek damages from Defendants Ahmad Shams ("Mr. Shams") and the Ahmad and Victoria Shams Revocable Trust of 1999 (the "Shams Trust") (collectively, "Defendants") for securities fraud, breach of contract, indemnification and fiduciary breach. Merex Aircraft provides, among other things, parts for U.S. manufactured legacy aircraft. Mr. Shams was Merex

*THE LESSER LAW GROUP*
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

1  Aircraft's founder, CEO and director at the time Merex Holding acquired it in 2011. At the

2  time of the acquisition, Mr. Shams knew, but failed to disclose, that he had for years directed

3  Company employees to provide customers with inferior, non-conforming parts at rates

4  reflective of those commanded by the superior products its customers ordered. The fraudulent

5  scheme resulted in an artificial inflation of the Company's revenues and valuations and

6  Merex Holding paid a comparably inflated price for the acquisition—the $20 million

7  purchase price reflected an overvaluation of the Company's stock by at least $15 million. The

8  Shams Trust was a signatory to, and obligor under, the terms of the sale.

9      2.      Mr. Shams knew, but failed to disclose, that the Company would sustain

10  other, substantial injuries as a result of Defendants' intentional misconduct, including, among

11  other things, the cost of (i) recalling defective parts; (ii) conducting a review of the

12  Company's sales under Mr. Shams's leadership; (iii) defending civil litigation brought by two

13  former employees based in part on Mr. Shams's conduct; (iv) responding to regulatory

14  inquiries; and (v) reputational damage and loss of business and commercial good will. Mr.

15  Shams's wrongful conduct has also put the Company at risk of adverse regulatory action and

16  penalties.  Plaintiffs seek reimbursement for the millions of dollars in losses they have

17  already sustained, and for the ongoing costs they continue to incur, as a result of Mr. Shams's

18  reckless and fraudulent conduct.

19  **THE PARTIES**

20      3.      Merex Holding is and at all relevant times has been a corporation organized

21  and existing under the laws of Delaware, with its principal place of business in Ventura

22  County, California.  Merex Holding owns and controls Merex Aircraft.

23      4.      Merex Aircraft is and at all relevant times has been a corporation organized

24  and existing under the laws of the State California, with its principal place of business in

25  Ventura County, California.  It was founded in 1982 by Mr. Shams.

26      5.      Mr. Shams is and at all relevant times has been a citizen and resident of the

27  State of California.  Mr. Shams resides in Ventura County.

28      6.      The Shams Trust is and at all relevant times has been an entity organized and

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

existing under the laws of the State of California.  Mr. Shams and his wife, Victoria Shams, are co-trustees of the Shams Trust.

7.      Plaintiff is unaware of the true names, status, capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend the Complaint to allege the true names and capacities of the Doe defendants when ascertained. Plaintiff is informed and believes that at all times herein mention, each of the fictitiously named defendants was in some manner responsible for Plaintiff's damages and injuries alleged herein.

8.      Plaintiff is informed and believes, and upon such information and belief alleges, that Defendants and Does 1 through 10, inclusive, were, at all times herein mentioned, authorized and empowered by each other to act, and did so act, as agents of each other, and all of the things herein alleged to have been done by them were done in the capacity of such agency. Upon information and belief, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiff for the damages it has sustained.

## JURISDICTION AND VENUE

9.      Subject matter jurisdiction is proper in this Court pursuant to Article 6 of the California Constitution.

10.      This Court has personal jurisdiction over Mr. Shams as he is, and has at all times relevant to this matter been, a resident and citizen of the State of California within the meaning of Cal. Code Civ. Pro. § 410.10.

11.      This Court has personal jurisdiction over the Shams Trust as it is, and has at all times relevant to this matter been, an entity organized under the laws of the State of California within the meaning of Cal. Code Civ. Pro. § 410.10.

12.      Venue is proper in this Court pursuant to Cal. Code Civ. Pro. § 395(a) as Mr. Shams resides in Ventura County and Plaintiffs are informed and believe that the principal place of administration for the Shams Trust is Ventura County.

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

## FACTUAL ALLEGATIONS

**I.      Background**

13.      Merex Aircraft provides distribution, maintenance, repair, overhaul, engineering, manufacturing, and program management solutions for U.S. manufactured legacy fighters, transports, patrol aircraft, and helicopters.

14.      Mr. Shams founded Merex Aircraft in 1982, and he served as its CEO from its founding through May of 2013.  Thereafter, Ms. Shams remained an employee of the Company and served on its Board of Directors until September 2015.

15.      Throughout his tenure at the Company, Mr. Shams engaged in a pattern of deceitful business practices. Among other things, Mr. Shams directed Company employees to fill customer orders for original equipment manufacturer (OEM) parts with parts that were not OEM-manufactured and/or filled with non-OEM parts that were not manufactured according to OEM specifications.  All of this was done without the customer's knowledge or consent.

16.      In addition, Mr. Shams caused technical drawings and specifications to be created by a process of reverse engineering OEM-manufactured parts, and these drawings and specifications, rather than the actual OEM specifications, would then be used to manufacture the parts.  The parts that were manufactured according to the reverse-engineered process were provided to the customer, without its knowledge or consent. The customer was nevertheless charged the elevated cost of OEM-manufactured parts. This resulted in Merex's costs being lower than they would have been had Merex purchased OEM parts to fill the customer's order and, consequently, generated a misleadingly higher profit margin for Merex.

17.      In furtherance of this deceitful practice, Mr. Shams would, among other things, direct Company employees to imprint false data on the non-OEM parts in order to make them appear to be OEM parts. Mr. Shams further directed Company employees to perpetuate the deceit by making false representations as to the source of the manufactured goods on export documentation.

/ / /

## II.      Mr. Shams Fraudulently Sells the Company.

18.      In September of 2011, Merex Holding purchased approximately 85 percent of the outstanding shares of Merex Aircraft stock ("Merex stock") for nearly $20 million (the "Transaction"). The Merex stock reflected many of the characteristics associated with common stock, including (i) the right to receive dividends, (ii) negotiability, (iii) the ability the be pledged or hypothecated; (iv) the conferring of voting rights; and (v) the capacity to appreciate in value.

19.      Prior to the Transaction, the majority of the outstanding shares of Merex stock were owned by Mr. Shams through the Shams Trust, and sold to Merex Holding in the Transaction.

20.      The Transaction was accomplished by a Stock Purchase Agreement dated September 22, 2011 (the "SPA"), executed by and between Merex Holding as the acquiring entity, and Merex Aircraft, Mr. Shams, Majic Khabbaz, Mr. Shams and Victoria Shams as co-trustees of the Shams Trust, and Mr. Khabbaz as trustee of the December 4, 2006 Majic Khabbaz Living Trust.  The two Trusts were the designated Sellers.

21.      Mr. Shams defrauded Merex Holding by making a number of material misstatements and omissions during the sale negotiations and in connection with Merex Holding's purchase of the Merexy stock. Mr. Shams's material misstatements included, among others, the following:

a)      Mr. Shams provided a Merex Holding representative with financial statements and other documents purporting to document the financial health of the Company including, but not limited to, year-end and interim balance sheets, and income statements. The financial revenues, projections and statements were materially false in that they were artificially inflated by sales of non-OEM and non-conforming parts that, under Mr. Shams's direction, were shipped to the customer falsely marked as OEM parts.

b)      Section 3.6 of the SPA stated that the financial statements "present[ed] fairly . . . the financial position of the Company." But the statements were knowingly false when made as Mr. Shams knew at the time of the acquisition that the Company's financial

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

profile was artificially inflated by his corrupt business practice of providing customers with non-conforming parts.

c)      Sections 3.10, and 3.20(a), (b) and (d) of the SPA represented and warranted that the Company was in material compliance with all laws and regulations applicable to its business as a manufacturer and exporter of military aircraft parts and hardware.  But the statements were knowingly false when made as Mr. Shams knew at the time of the acquisition that the Company was not in material compliance with all laws and regulations applicable to its business.

d)      Merex Holding's reliance on Defendants' representations was reasonable as Mr. Shams was the Company's founder and leader since its inception and there was no reasonably available data to refute them.

e)      During Mr. Shams's tenure as CEO, there were insufficient policies and procedures in place to prevent the fraudulent mislabeling of manufactured parts, leading to additional potential violations of U.S. law and intentionally false depictions of the Company's financial health.

22.     As a direct result of Mr. Shams's intentional and fraudulent misrepresentations and omissions during the sale negotiations, Merex Holding was fraudulently induced to purchase the Company for at least $15 million more than it was actually worth.  But for Mr. Shams's intentional and fraudulent misrepresentations and omissions during the sale negotiations, Merex Holding would not have purchased the Company for $20 million.

23.     Pursuant to Section 7.1(g) of the SPA, Mr. Shams is required to hold Merex Holding harmless for any damages that result from or arise out of the seller's breach of Sections 3.10 and 3.20(a), (b) and (d) of the SPA. Mr. Shams's material misrepresentations and omissions made pursuant to those Sections constitute a plain breach of the SPA.

24.     Pursuant to Section 7.1(a), of the SPA, Mr. Shams is required to hold Merex Holding harmless for breaches of the representations he made in Sections 3.6 and 3.10 of the SPA.  Mr. Shams is also required to indemnify Merex Holding for damages caused by such

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

breaches. Mr. Shams, through his counsel, has refused, and continues to refuse, to honor his contractual indemnification obligations.

25.     Pursuant to Section 7.9 of the SPA, as well as under the April 30, 2014 Amended and Restated Subordinated Seller Note between Merex Holding and the Shams Trust (the "Note"), Merex Holding is entitled to offset any claims for indemnification made pursuant to the SPA against amounts due under the Note.  The principal amount due on the Note before interest is $1,466,941.00.  Merex Holding paid at least $15 million over Merex Aircraft's true value in reliance on Mr. Shams's fraudulent misrepresentations and omissions as to the true value of Merex Aircraft. Since the SPA requires Mr. Shams to indemnify Merex Holding for that loss, Merex Holding is entitled to exercise its right of offset and seeks a declaration from this Court that it does not owe Mr. Shams any further amounts under the Note.

26.     Plaintiffs offer the following, non-exhaustive examples of Mr. Shams's wrongful conduct prior to the Transaction. Plaintiffs allege that Mr. Shams engaged in this wrongful conduct knowing that it would materially affect the value of the Company as it exposed the Company to recalls, lawsuits and costly regulatory actions, among other things:

**a)     Sale of F-5 Brake Pads to a Foreign Military Customer**

27.     In early 2008, a foreign military customer placed an order with Merex Aircraft for brake pads manufactured by Meggitt Aircraft Braking Systems ("Meggitt") for an F-5 aircraft.  At Mr. Shams's direction, and unbeknownst to the customer, the order was filled with parts manufactured by Merex Aircraft using a third party supplier rather than the OEM (Meggitt) brakes the customer ordered.

28.     Prior to shipment, Mr. Shams instructed—as memorialized in a handwritten note in the Company's files—that the Merex brake pads be marked with the OEM (Meggitt) part number.  Plaintiffs allege that Mr. Shams ordered the deception in order to lull the customer into believing that it was receiving OEM (Meggitt) brake pads and, importantly, to artificially increase Merex Aircraft's profit margin.

/ / /

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

29.     At Mr. Shams's direction, the Company shipped the fraudulently labeled brake pads to the customer without informing the customer that it was receiving parts that were materially different from, and inferior to, those it had ordered.

**b)     Sale of F-5 Brake Pads to Thailand**

30.     In January of 2008, the Royal Thai Air Force placed an order with Merex Aircraft for Meggitt brake pads for the F-5 aircraft.  At Mr. Shams's direction and unbeknownst to the customer, Company employees were directed to fill the order with parts manufactured by Merex using drawings and specifications that were reverse engineered from finished OEM parts. The resulting product differed materially from the original OEM specifications.

31.     In February of 2009, at Mr. Shams's direction, the reverse engineered brake pads were sold to the Royal Thai Air Force bearing the fraudulent imprint, also ordered by Mr. Shams, that the pads were OEM parts. The brake pads were shipped with a false certification that the parts conformed to OEM specifications and the export documentation falsely identified the parts as OEM.

**c)     Sale of Horizontal Stabilizers to Taiwan**

32.     In 2009, the Republic of China Air Force placed an order with Merex Aircraft for Northrop Grumman horizontal stabilizers for the F-5 fighter aircraft.  However, at Mr. Shams's direction and unbeknownst to customers, the order was filled with non-OEM parts that were not manufactured according to OEM specifications. Among other things, Mr. Shams directed that the stabilizers be manufactured from bar stock rather than being forged as OEM specs require.

33.     In May and June of 2011, and at Mr. Shams's direction, the stabilizers were falsely labeled as OEM parts, sold to the Republic of China Air Force, and shipped with a false certification that the parts conformed to OEM specifications.

34.     An inspection by the customer upon delivery determined that there were structural weaknesses in the stabilizers that made them unusable.  As a result, Merex Aircraft was required to send several of its employees and an independent contractor to Taiwan to test

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, ETC.
Case No.: 56-2018-00518236-CU-FR-VTA

the parts, and the parts were eventually returned to Merex Aircraft for repair.

### d)    Sale of Lead/Lag Assembly Parts to South Korea

35.    In August of 2010, the Defense Acquisition Program Administration for the Republic of Korea ("DAPA") ordered McDonald Douglas lead lag link assembly parts ("lead/lag parts") for its fleet of MD-500 helicopters from Merex Aircraft.

36.    Mr. Shams directed that the Company manufacture the lead/lag parts through a process of reverse engineering which resulted in specifications that differed materially from the OEM specifications.

37.    In April of 2013, and at Mr. Shams's direction, the lead/lag parts were sold to DAPA, fraudulently mislabeled as OEM parts, and shipped along with a false certification that the parts conformed to OEM specifications. The export documentation that accompanied the shipment, as directed by Mr. Shams, falsely identified the parts as OEM parts.

38.    A subsequent Merex Aircraft internal review of the MD-500 parts sold to DAPA resulted in a recall notice being issued in August of 2016.  Merex Aircraft has since quarantined all MD-500 parts currently in stock and has stopped filling new orders for MD 500 parts.

### III.    Subsequent to the Transaction, Mr. Shams Continued To Breach His Fiduciary Duties to the Company

39.    Following the Transaction, on or about September 22, 2011, Mr. Shams and Merex Aircraft entered into an employment agreement (the "Employment Agreement") pursuant to which he continued to serve as CEO of the Company until May 2013. From May 2013 until September 2015, Mr. Shams continued his employment with the Company pursuant to Employment Agreement and continued to serve on its Board of Directors.

40.    Pursuant to the Employment Agreement, Mr. Shams agreed that he would adhere to rules and regulations established by the Board of Directors of the Company for the conduct of its employees.

/ / /

/ / /

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, ETC.
Case No.: 56-2018-00518236-CU-FR-VTA

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

41.     As CEO of Merex Aircraft and thereafter, Mr. Shams had fiduciary duties to the Company and its stakeholders that required him to conduct himself in a manner that placed the rights and interests of the Company and its stakeholders ahead of his own. In directing Company employees to fill orders for OEM parts with parts that were not OEM-manufactured or OEM-compliant, fraudulently mislabel those non-OEM parts to make them appear to be OEM parts, and generate false export documentation, Mr. Shams blatantly breached his fiduciary obligations at great financial and reputational detriment to the Company.

42.     Plaintiffs offer the following non-exhaustive examples of Mr. Shams's wrongful conduct that post-dates the Transaction:

**a)      Sale of F-5 Break Pads to Chile**

43.     In April of 2014, the Chilean Air Force issued a purchase order to Merex Aircraft for Meggitt brake pads for the F-5 aircraft.  Rather than deliver the requested OEM parts, Mr. Shams directed that the order be filled with fraudulently mislabeled, non-OEM brake pads.

44.     In June of 2014, and at Mr. Shams's direction, the brake pads were sold to the Chilean Air Force, as fraudulently mislabeled, and shipped along with a false certification that the parts conformed to OEM specifications. The export documentation that accompanied the shipment, at Mr. Shams's direction, falsely identified the parts as OEM parts.

45.     Merex eventually recalled the non-OEM brake pads after learning of defects in their construction and replaced them with OEM brake pads.

**b)      Sale of Arrestor Hooks to Brazil**

46.     On December 6, 2011, the Brazilian Air Force issued a request for two Northrop Grumman arrestor hooks for its F-5 aircraft.  However, at Mr. Shams's direction, the order was filled with parts manufactured by Merex using third party, rather than OEM, parts. Among other things, Mr. Shams directed that the arrestor hooks be manufactured using steel bar, rather than the more expensive process of die forging, as required by OEM specifications. Mr. Shams also instructed that the arrestor hooks be fraudulently mislabeled

with the OEM part number in order to further advance the fiction that the hooks were OEM-compliant. Merex Aircraft sold the arrestor hooks to the Brazilian Air Force and were shipped along with a false certification that the parts conformed to OEM specifications. The export documentation that accompanied the shipment, at Mr. Shams's direction, falsely identified the parts as OEM parts.

47.    In October 2016, after the nonconformance issues with this order came to light, the Company issued a recall notice to the Brazilian Air Force.

### c)    Sale of Longerons to Thailand

48.    In early 2012, the Royal Thai Air Force issued a request for several different types of Northrop Grumman longerons for its F-5 aircraft. At Mr. Shams's direction, the order was filled, not with OEM parts as requested, but with parts manufactured by Merex using a third-party supplier. Among other things, Mr. Shams directed that the longerons be manufactured from block, instead of from the more costly step die, extrusion process which OEM specifications require.

49.    In December 2012, the longerons were sold to the Royal Thai Air Force and shipped along with a false certification that the parts conformed to OEM specifications even though Mr. Shams knew that they did not. The export documentation that accompanied the shipment falsely identified the parts as OEM parts, at Mr. Shams's direction.

50.    The discovery of the non-conforming longerons caused Merex Aircraft to take costly corrective action.  In February 2016, a recall notice for the longerons was sent to the Royal Thai Air Force.

### IV.    The Consequences of Mr. Shams's Wrongful Conduct

51.    Upon discovering Mr. Shams's wrongful conduct in 2015, Merex Aircraft engaged in a costly and time-consuming internal review process that resulted in the Company putting in place measures and systems to prevent such conduct from occurring in the future.

52.    Merex Aircraft's internal review involved an order-by-order inspection of 1876 separate sales orders of critical aircraft parts over a period stretching from 2008 through 2014.

The Lesser Law Group
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

53.     To ensure that nonconforming parts created during Mr. Shams's tenure at the Company were not inadvertently shipped to customers, suspect parts have been quarantined, and recalls have been issued to all customers impacted by Mr. Shams's fraudulent scheme.

54.     Merex Aircraft concluded that it could no longer sell lead/lag parts for the MD-500 helicopter.

55.     The issuance of recalls to multiple customers has hurt the Company's good will in the marketplace, and has severely impacted Merex Aircraft's ability to retain customers and do business.

56.     Since the discovery of Mr. Shams's conduct, several of Merex Aircraft's largest customers—including the militaries of Bangladesh, the Republic of Korea, Jordan, and Brazil—have significantly reduced their business with the Company.

57.     In addition, the Company has incurred substantial attorneys' fees and costs defending and settling a civil "whistleblower" lawsuit brought by two former employees whose allegations included many of the fraudulent business practices put in place by Mr. Shams and which the Company had to defend due to Mr. Shams's wrongdoing.

58.     As a direct result of Mr. Shams's wrongful conduct, the Plaintiffs have suffered at least $18 million in damages from the confluence of (i) overpaying for the Company in the Transaction; (ii) lost or inflated sales and recalls; (iii) conducting internal and external reviews of the Company's sales orders including quarantining of questionable parts and technical drawings; (iv) responding to regulatory inquiries; and (v) defending itself and certain of its affiliates, shareholders, officers, and directors against a civil litigation brought by two former employees based in part on Mr. Shams's conduct.

## V.     Mr. Shams' Adverse Domination of the Companies

59.     From September 2011 through May 2013, Mr. Shams so controlled and dominated Merex Holding and Merex Aircraft that he prevented the companies from discovering his malfeasance and taking remedial action against him. Even after Mr. Shams stepped down from his position as CEO of Merex Aircraft in 2013, he remained a director of both companies and Merex Holding's board chair. His continued leadership and pervasive

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

involvement in both companies' corporate strategy and its tactical execution, in his positions as a director, board Chairman and full-time executive employee of Merex Aircraft, was so extensive that he functioned as both companies' de facto Chairman.  In all of these positions, Mr. Shams' used his history with the company, his status as Merex Aircraft's founder, his intimate familiarity with its products, customers and operations, his ownership of Merex Holding stock and his long-time relationships with key employees to control and dominate the companies and their decision-making, including using his position of dominance to prevent the Company from making a claim for his ongoing malfeasance. Shams' control and dominance continued until Mr. Shams was discharged in September 2015.

### FIRST CAUSE OF ACTION

### (On Behalf of Merex Holding)

### Breach of Contract as to Ahmad Shams and the Ahmad and

### Victoria Shams Revocable Trust of 1999

60.     Plaintiffs repeat and re-allege paragraphs 1 through 59 hereof as though fully set forth herein.

61.     Plaintiff Merex Holding and Defendants Ahmad Shams and the Shams Trust, among others, entered into a written contract referred to herein as the SPA on September 22, 2011.

62.     Merex Holding fully performed its obligations under the SPA.

63.     In Sections 3.10, 3.20(a), (b) and (d) of the SPA, Defendants represented and warranted that the Company was in material compliance with all laws and regulations applicable to its business.  Defendants also represented in Section 3.6 of the SPA that the Company's financial statements provided to the buyers in connection with the Transaction were accurate.

64.     Defendants breached the provisions of Sections 3.10, and 3.20(a), (b) and (d) of the SPA as the representations and warranties contained in those sections were false. Mr. Shams knew them to be false at the time as he personally directed the fraudulent misconduct that resulted in the overvaluation of the Company and the subsequent damages caused by that

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

1   misconduct.

2       65.     Because Mr. Shams's misrepresentations and omissions were fraudulent and

3   intentional, the limitations of liability set forth in Section 7.4 of the SPA do not apply.

4       66.     As a result of Defendants' breach of the SPA, Merex Holding purchased

5   Merex Aircraft for at least $15 million more than it was actually worth.

6                        **SECOND CAUSE OF ACTION**

7                        **(On Behalf of Merex Holding)**

8       **Indemnification Under the SPA as to Ahmad Shams and the Ahmad and**

9                    **Victoria Shams Revocable Trust of 1999**

10      67.     Plaintiffs repeat and re-allege paragraphs 1 through 66 hereof as though fully

11  set forth herein.

12      68.     Plaintiff Merex Holding and Defendants Ahmad Shams and the Shams Trust,

13  among others, entered into a written contract referred to herein as the SPA on September 22,

14  2011.

15      69.     Merex Holding fully performed its obligations under the SPA.

16      70.     Pursuant to Section 7.1 of the SPA, Defendants are required to hold harmless

17  Merex Holding for, among other things, any damages that result from or arise out of the

18  seller's breach of any representation or warranty made by the Company in Section 3,

19  including those made under Sections 3.6, 3.10, and 3.20(a), (b) and (d) of SPA.

20      71.     Defendants breached the representations made under Sections 3.6, 3.10, and

21  3.20(a), (b) and (d) of SPA as set forth in Section II above.

22      72.     Because Mr. Shams's misrepresentations and omissions were fraudulent and

23  intentional, the limitations of liability set forth in Section 7.4 of the SPA do not apply.

24      73.     As a result of Defendants' breach of Sections 3.6, 3.10, and 3.20(a), (b) and

25  (d) of SPA, they are required to indemnify Merex Holding for damages caused by such

26  breach.

27  / / /

28  / / /

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

14

The Lesser Law Group
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

**THIRD CAUSE OF ACTION**

**(On Behalf of Merex Holding)**

**Declaratory Judgment That No Further Amounts Are Due to Ahmad Shams and the Shams Trust Under the Note**

74.     Plaintiffs repeat and re-allege paragraphs 1 through 73 hereof as though fully set forth herein.

75.     Merex Holding and the Shams Trust entered into a written contract, referred to herein as the Note, on April 30, 2014.

76.     Merex Holding fully performed its obligations under the Note.

77.     Under the terms of the Note, and under Section 7.9 of the SPA, Merex Holding is entitled to offset amounts due under that Note against any claims for indemnification made by Merex Holding pursuant to the SPA.

78.     Under Section 7.1 of the SPA, Defendants are required to indemnify Merex Holding for the damages caused by Mr. Shams's conduct as set forth in Section II above.

79.     The damages caused by Mr. Shams's conduct as set forth in Section II above exceed the amount due to Defendants under the Note.

80.     An actual controversy has arisen between Plaintiffs and Defendants regarding Merex Holding's remaining obligations to Defendants under the Note.  Plaintiffs contend Merex Holding owes no further amounts based on the facts alleged above.  Defendants dispute this contention.

81.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that plaintiff may ascertain its rights and duties under the Note as alleged herein.

82.     Accordingly, Plaintiffs request that this Court issue a declaratory judgement that Merex Holding does not owe Mr. Shams any further amounts under the Note.

/ / /

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

**(On Behalf of Merex Holding)**

**Intentional Misrepresentation as to Ahmad Shams and the Ahmad and**

**Victoria Shams Revocable Trust of 1999**

83.     Plaintiffs repeat and re-allege paragraphs 1 through 82 hereof as though fully set forth herein.

84.     In September of 2011, Defendants sold their controlling stake in the Company to Merex Holding pursuant to the SPA.

85.     In Sections 3.10, 3.20(a), (b) and (d) of the SPA, Defendants represented and warranted that the Company was in material compliance with all laws and regulations applicable to its business.  Defendants also represented in Section 3.6 of the SPA that the Company's financial statements provided to the buyers in connection with the Transaction were accurate.

86.     These representations and warranties in the SPA were knowingly false when made as Mr. Shams was personally directing the wrongful conduct that resulted in the false statements. Additionally, Mr. Shams provided a representative of Merex Holding with financial statements and other documents regarding the purported financial health of the Company at the time of the Transaction, including but not limited to, year-end and interim balance sheets, and income statements.  Such statements were false because they were inflated or otherwise influenced by Mr. Shams's wrongful conduct, and Mr. Shams knew such statements were false when he provided them to the buyers.  The Plaintiffs reasonably relied on the false statements to their detriment.

87.     During the sale process, Mr. Shams had a duty to disclose to the buyers the wrongful conduct described herein, as such conduct was material to the financial health of the Company.  Mr. Shams failed to do so.

88.     Merex Holding justifiably relied on Defendants' misrepresentations and omissions in connection with the Transaction in that Defendants had exclusive possession of the true facts and Plaintiffs had no knowledge of the facts Defendants misrepresented and

The Lesser Law Group
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, ETC.**
Case No.: 56-2018-00518236-CU-FR-VTA

concealed, being dependent on Defendants for their disclosure.

89.    Because Mr. Shams's misrepresentations and omissions were fraudulent and intentional, the limitations of liability set forth in Section 7.4 of the SPA do not apply.

90.    As a direct result of Defendants' intentional misrepresentations and omissions during the Transaction, Merex Holding was fraudulently induced to purchase the Company from Mr. Shams for more than it was actually worth.

91.    As a result of Defendants' knowingly false representations and omissions, Merex Holding has suffered damages in an amount to be determined at trial but not less than the $15 million that Merex Holding overpaid for the Company, as well as the post-Transaction damages described herein that have resulted from Mr. Sham's wrongful conduct.

92.    In making these false representations and omissions, Defendants acted fraudulently, within the meaning of Civil Code Section 3294, in that Defendants misrepresented and concealed material facts known to the Defendants and with the intention of thereby depriving a person of property or legal rights or otherwise causing injury. Defendants acted with malice, within the meaning of Section 3294, in that their conduct was willful and in conscious disregard of Merex Holding's right to enter into an arms-length business transaction that reflected Merex Aircraft's true value. Merex Holding is accordingly entitled to punitive damages under Cal. Civ. Code § 3294.

## FIFTH CAUSE OF ACTION

### (On Behalf of Merex Holding)

### Violation of California Corporations Code §§25401/25501

### as to Ahmad Shams and the Ahmad and

### Victoria Shams Revocable Trust of 1999

93.    Plaintiffs repeat and re-allege paragraphs 1 through 92 hereof as though fully set forth herein.

94.    On September 22, 2011, pursuant to the SPA, Plaintiff Merex Holding purchased a majority of the outstanding shares of Merex stock from Defendants. The Company shares were "securities" within the meaning of California Corporations Code

The Lesser Law Group
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

1   §§25401 and 25501 and bore many of the characteristics associated with common stock. In

2   purchasing the Merex stock, Plaintiff Merex Holding understood that Defendants and

3   Plaintiff were engaged in a securities transaction that was governed, and protected by, the

4   California and federal securities laws.

5      95.   In Sections 3.10, 3.20(a), (b) and (d) of the SPA, Defendants represented and

6   warranted that the Company was in material compliance with all laws and regulations

7   applicable to its business.  Defendants also represented in Section 3.6 of the SPA that the

8   Company's financial statements provided to the buyers in connection with the Transaction

9   were accurate.

10     96.   Defendants' representations and warranties in the SPA were knowingly false

11   when made as Mr. Shams was the architect of the wrongful conduct that resulted in the false

12   representations and warranties contained in the SPA. Additionally, Mr. Shams provided a

13   representative of Merex Holding with financial statements and other documents regarding the

14   financial health of the Company in connection with the Transaction, including, but not

15   limited to, year-end and interim balance sheets, and income statements. The balance sheets

16   and statements were false because they reflected financials that were wrongfully inflated by

17   the Company's provision of nonconforming parts, or otherwise influenced by Mr. Shams's

18   wrongful conduct. Mr. Shams knew that the balance sheets and statements were false and

19   misleading when he provided them to the buyers.

20     97.   During the sale negotiations, Mr. Shams had a duty to disclose the wrongful

21   conduct described herein to the buyers, as such conduct was material to the financial health of

22   the Company and, consequently, the value of the Company shares that Merex Holding

23   contemplated buying. Mr. Shams failed to do so.

24     98.   Merex Holding justifiably and reasonably relied on Sections 3.6, 3.10 and 3.20

25   (a), (b) and (d) of the SPA, and the false balance sheets and statements, in deciding to buy the

26   Company shares in connection with the Transaction. At the time of Merex Holding's reliance

27   on the false and misleading materials generated and shared by Mr. Shams, it was unaware of

28   Mr. Shams's wrongful conduct.

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

99.     Because Mr. Shams's misrepresentations and omissions were fraudulent and intentional, the limitations of liability set forth in Section 7.4 of the SPA do not apply.

100.     As a direct result of Defendants' knowingly fraudulent representations and omissions, Merex Holding suffered damages in an amount to be determined at trial, but not less than the $15 million it overpaid for the Company's stock in reliance on Mr. Shams's false statements and representations.

101.     In making these false representations and omissions, Defendants acted fraudulently, within the meaning of Civil Code Section 3294, in that Defendants misrepresented and concealed material facts known to the Defendants and with the intention of thereby depriving a person of property or legal rights or otherwise causing injury. Defendants acted with malice, within the meaning of Section 3294, in that their conduct was willful and in conscious disregard of Merex Holding's right to enter into an arms-length business transaction that reflected Merex Aircraft's true value.   Merex Holding is accordingly entitled to punitive damages under Cal. Civ. Code § 3294.

### SIXTH CAUSE OF ACTION

### (On Behalf of Merex Holding)

### Unjust Enrichment as to Ahmad Shams and the Ahmad and

### Victoria Shams Revocable Trust of 1999

102.     Plaintiffs repeat and re-allege paragraphs 1 through 101 hereof as though fully set forth herein.

103.     Mr. Shams benefitted himself at the expense of Merex Holding through the wrongful conduct as set forth in Section II above.

104.     Mr. Shams's wrongful conduct artificially inflated the value of the Company, thereby resulting in an unjust benefit to Mr. Shams, who – prior to the Transaction – controlled the majority of the outstanding equity in the Company – and resulted in Merex Holding paying $15 million more to purchase the outstanding equity of the Company than it otherwise would have.

/ / /

19

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

105. Equity and good conscience require restitution of a portion of the purchase price for the outstanding equity in the Company to be determined at trial, but not less than the difference between the purchase price for the outstanding equity in the Company and what the Company's equity would have been worth had Mr. Shams not operated the Company's business in such a manner as to artificially inflate its value.

**SEVENTH CAUSE OF ACTION**

**(On Behalf of Merex Aircraft)**

**Breach of Fiduciary Duty By Ahmad Shams**

106. Plaintiffs repeat and re-allege paragraphs 1 through 59 hereof as though fully set forth herein.

107. From 1982 through May of 2013, Mr. Shams served as CEO of Merex Aircraft. Thereafter, he continued to serve on the Board of Directors of the Company and worked as an executive employee and de facto Chairman of the Company until September 2015.

108. At all times during his affiliation with Merex Aircraft, Mr. Shams owed fiduciary duties to the Company and its stakeholders. Mr. Shams violated such duties by engaging in the wrongful conduct as set forth in Section III above.

109. The Company has been injured through the expenses incurred as a result of Mr. Sham's breaches of his fiduciary duties, including: (i) recalling defective parts; (ii) conducting a review of the Company's sales under Mr. Shams; (iii) defending a civil litigation brought by two former employees based in part on Mr. Shams's conduct; (iv) responding to regulatory inquiries and (v) reputational damage and loss of business and commercial good will.

110. As a direct result of Mr. Shams's breach of his fiduciary duties, Plaintiff Merex Aircraft is entitled to recover damages in an amount to be determined at trial but not less than $3 million.

111. In committing the acts and omissions alleged above, Shams acted fraudulently, within the meaning of Civil Code Section 3294, in that he misrepresented and

20

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

1  concealed material facts known to him and with the intention of thereby depriving the

2  Company of property or legal rights or otherwise causing injury.  Shams acted with malice,

3  within the meaning of Section 3294, in that his conduct was willful and in conscious

4  disregard of the Company's rights. Accordingly, Merex Aircraft is entitled to punitive

5  damages under Cal. Civ. Code § 3294.

**EIGHTH CAUSE OF ACTION**

**(On Behalf of Merex Aircraft)**

**Breach of Employment Contract by Ahmad Shams**

9  112.    Plaintiffs repeat and re-allege paragraphs 1 through 59 and 107 through 109

10  hereof as though fully set forth herein.

11  113.    Following the Transaction, Mr. Shams continued to serve as CEO of the

12  Company pursuant to a written agreement, referred to herein as the Employment Agreement,

13  entered into between Mr. Shams and Merex Aircraft on or about September 22, 2011.

14  114.    Merex Aircraft fully performed its obligations under the Employment

15  Agreement.

16  115.    Pursuant to the Employment Agreement, Mr. Shams agreed that he would

17  adhere to rules and regulations established by the Board of Directors of the Company for the

18  conduct of its employees.

19  116.    Mr. Shams's conduct, as set forth above, was not consistent with rules and

20  regulations established by the Board of Directors of the Company for the conduct of its

21  employees.

22  117.    By and through the conduct as set forth in Section III above, Mr. Shams failed

23  to adhere to the rules and regulations established by the Company's Board of Directors,

24  which constituted a breach of the Employment Agreement.

25  118.    As a direct result of Mr. Shams's conduct as set forth above, Merex Aircraft

26  has suffered damages in an amount to be determined at trial.

27  / / /

28  / / /

THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor · San Francisco, California 94104
Telephone: (415) 453-7600 | Facsimile: (415) 295-4122

**PRAYER FOR RELIEF**

WHEREFORE:  Plaintiffs Merex Holding Corp., and Merex Aircraft Company, Inc., pray that this Court:

1.      Grant judgment for Plaintiffs on all causes of action contained in the Complaint.

2.      Award compensatory damages in an amount to be determined at trial.

3.      Award restitution to Merex Holding in an amount to be determined at trial.

4.      Award pre-judgement interest on an amount to be proven at trial.

5.      Award punitive damages pursuant to Cal. Civ. Code § 3294 in an amount to be proven at trial.

6.      Award attorney's fees and costs pursuant to Cal. Civ. Code § 1717 in an amount to be proven at trial; and

7.      Award such further relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiffs Merex Holding Corp., and Merex Aircraft Company, Inc. hereby demand trial by jury of all issues triable by jury.

Date: March 11, 2019                    THE LESSER LAW GROUP



By_____
    Don A. Lesser
    Barbara L. Gately
    *Attorneys for Plaintiffs Merex Holding Corp., and*
    *Merex Aircraft Company,*